UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| WILLIAM WHITE,<br><br>   PLAINTIFF,<br><br>v.<br><br>WESTLAKE PORTFOLIO MANAGEMENT, LLC, *et al.*<br><br>   DEFENDANTS. | CASE NO. 3:24-CV-33-DJH<br><br>*Electronically Filed* |

**WESTLAKE PORTFOLIO MANAGEMENT, LLC'S**
**MOTION TO DISMISS AND COMPEL ARBITRATION**

  Defendant Westlake Portfolio Management, LLC, pursuant to Rule 12(b)(1) and the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), moves the Court to dismiss this action and compel arbitration. All claims asserted by Plaintiff William White ("Mr. White") arise out of his relationship with Westlake based on its servicing of a written lease agreement. That lease agreement mandates that all disputes or controversies arising from or relating to the lease, including all claims asserted against the lessor, assignee, or related third parties—including Westlake—be submitted to arbitration. "[C]ourts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (citations omitted). Because Mr. White and Westlake are subject to a valid arbitration agreement, which delegates even the question of arbitrability to the arbitrator, the Court should compel Mr. White to submit to arbitration. Moreover, because Mr. White's claims will be fully resolved through binding arbitration, the Court should dismiss his Complaint because it cannot grant relief on his claims. *See FCCI Ins. Co. v. Nicholas Cnty. Libr.*, No. 5:18-CV-038, 2019 WL 1234319, at *5 (E.D. Ky.

1

Mar. 15, 2019) ("Simply put, a federal court may not grant relief on claims that are subject to a mandatory arbitration provision.").

## FACTUAL BACKGROUND

On February 8, 2023, Mr. White entered into a lease agreement with RAC Dealership, LLC d/b/a American Car Center ("ACC") to lease a 2020 Kia Sportage. ACC assigned the lease agreement to AF Title Co., which ultimately assigned the servicing of the account to Westlake on May 22, 2023. *See* Decl. of John Schwartz, and Exhibits thereto.[1] The lease agreement, attached as Exhibit A, mandates arbitration of any dispute against the lessor, assignee, and assignee's servicers like Westlake. *See* Ex. A, p. 4, ¶ 41(A)(g). "Dispute" is defined in the broadest sense, to include "all claims asserted . . . against Lessor or Assignee and/or any of Lessor's or Assignee's . . . servicers . . . including claims for money damages and/or equitable or injunctive relief . . . and/or . . . all claims arising from or relating directly or indirectly to the disclosure by Lessor or Assignee or [their servicers] of any non-public personal information about [Lessee]." *Id.* ¶ 41(A)(g), (j). The provision also explains that its arbitration requirement applies equally to the agreement to arbitrate or the arbitrability of any issue. *Id.* ¶ 41(A)(a). Also contained in the arbitration provision is a paragraph outlining an "opt-out process." *Id.* ¶ 41(I).

---

[1] "[I]t is beyond question that a court resolving a motion to compel arbitration is not constrained to consider only the allegations of plaintiff's complaint. Indeed, the court is obligated, assuming the issue cannot be determined from the face of plaintiff's complaint, to consider affidavits and other evidence of a type that would be submissible at the summary judgment stage." *Powers v. Charles River Lab'ys, Inc.*, No. 16-cv-13668, 2017 WL 4324942, at *4 (E.D. Mich. Sept. 29, 2017). The Sixth Circuit has stated that "[t]he district court must undertake a limited review of evidence to determine whether it has the authority to hear a case or compel arbitration." *Andrews v. TD Ameritrade, Inc.*, 596 F. App'x 366, 371 (6th Cir. 2014) (affirming district court's resolution of defendant's motion to compel arbitration, which was filed pursuant to Rule 12(b)(1) and rejecting plaintiff's argument that the district court erred in relying on affidavits and agreements that were outside the pleadings).

Ms. White signed the lease agreement. He signed the page containing a bolded, capitalized disclaimer that makes clear that by signing the agreement, Mr. White "acknowledg[es] that [the] lease contains an arbitration provision, that [he] has read the arbitration provision and agree[s] to its terms." *Id.* p. 5. Mr. White did not opt out of the arbitration provision. And so, Mr. White agreed that any disputes related to the lease of the vehicle, including those against servicers of the lessor or assignee, would be resolved by arbitration. *See id.* ¶ 41.

In December 2023, Mr. White filed this lawsuit against Westlake and three credit reporting agencies, alleging that after he entered into the lease agreement, he never received a Kentucky title for the vehicle and therefore could not drive it in Kentucky. Compl. ¶ 18. He erroneously alleges that Westlake financed the loan and that Mr. White purchase the vehicle. *Id.* He also alleges that his credit report showed a Westlake tradeline indicating "that Plaintiff was past due and in default on his Westlake account," which he claims is "false and derogatory." *Id.* ¶¶ 19–20. Mr. White further claims that he attempted to contact Westlake to resolve this issue, but that he was unable to reach Westlake. *Id.* ¶ 19. Based on these allegations, he asserts claims for negligent and willful violations of the Fair Credit Reporting Act against Westlake and the credit reporting agencies, as well as breach of contract, breach of the duty of good faith and fair dealing, and violations of the Kentucky Consumer Protection Act against Westlake. The parties attempted to resolve the dispute informally but were not successful. Despite having notice of the arbitration agreement at the outset of this lawsuit, Mr. White has not submitted his claims to arbitration.

## ARGUMENT

A motion to compel arbitration is properly considered as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).  *See Powers*, 2017 WL 4324942, at *4.[2]  The mandatory arbitration provision in the lease agreement is enforceable under the FAA, which applies to contracts "evidencing a transaction involving commerce," such as the lease agreement here.  9 U.S.C. § 2 (1947).  The FAA's reference to "involving commerce" has been interpreted as "the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest possible exercise of Congress' Commerce Clause Power."  *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74 (1995).  Furthermore, "Congress' Commerce Clause Power 'may be exercised in individual cases without showing any specific effect on interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'"  *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–57 (2003) (quotation omitted).  In other words, "[o]nly that general practice need bear on interstate commerce in a substantial way."  *Id.* at 57.

The activity in this case, involving a transaction governed by an agreement that is subject to the laws of Tennessee, concerning a vehicle located in Kentucky, and implicating parties in various states (*e.g.*, the Assignee), presents a sufficient nexus with interstate commerce to bring

---

[2] The Court may also properly consider this motion to compel arbitration as a motion to dismiss under Rule 12(b)(6) where, as here, the claims at issue are subject to a mandatory arbitration agreement, and a "federal court may not grant relief on [the] claims . . . ." *See FCCI Ins. Co.*, 2019 WL 1234319, at *5; *see also Powers*, 2017 WL 4324942, at *4.  Exhibits attached to the motion may be considered when ruling on a 12(b)(6) motion without converting the motion to one for summary judgment, because they are central to the claims contained in the complaint. *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011) (quotation omitted).

the transaction within the FAA's reach. Accordingly, the FAA provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable," 9 U.S.C. § 2, and "declare[s] a national policy favoring arbitration," *Preston v. Ferrer*, 552 U.S. 346, 353 (2008). The Supreme Court has described the FAA as reflecting both "a liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Id.* at 339 (citations omitted); *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (explaining that "courts must 'rigorously enforce arbitration agreements according to their terms'"). The FAA's effect "is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). As such, courts are required to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* at 218.

Further, the Sixth Circuit has held that a nonparty to the agreement, like Westlake, can enforce an arbitration agreement. *See Moran v. Svete*, 366 F. App'x 624, 627 n.4 (6th Cir. 2010) (citation omitted) ("[N]onsignatories may be bound to an arbitration agreement under ordinary state law contract and agency principles."); *see also Swiger v. Rosette*, 989 F.3d 501, 506–07 (6th Cir. 2021) (citation omitted) (holding that the ability to enforce an arbitration agreement constitutes an issue of enforceability that must be considered by the arbitrator when the contract

5

so provides). Westlake, as the servicer of Mr. White's account, is the agent of the assignee of the lease agreement. The agreement also explicitly requires the arbitration of any claims against servicers of the assignee or lessor under the lease agreement. And in any event, under the agreement, any questions as to who can enforce the agreement must be determined by the arbitrator. *See* Ex. A, p. 4, ¶ 41(A)(a) (providing that the arbitration agreement applies to "all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of [the] Arbitration Provision, the validity and scope of [the] Arbitration Provision and any claim or attempt to set aside the Arbitration Provision"); *Moran*, 366 F. App'x at 627 n.4. Westlake can therefore enforce the arbitration agreement.

In line with the FAA's purpose, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25. Courts should "move the parties to an arbitrable dispute out of court and into arbitration as *quickly and easily as possible*," *Preston*, 552 U.S. at 357 (emphasis added), as a failure to do so would undermine the FAA's intent to effectuate parties' desire to use an alternative dispute resolution process to avoid the expense and inefficiencies of litigation.

The Court should compel arbitration because Mr. White entered into a valid, written agreement to arbitrate, which governs his relationship with Westlake in the lease transaction, and he agreed to arbitrate even the question of arbitrability. *See* 9 U.S.C. §§ 3, 4. And because Mr. White agreed to arbitrate the question of arbitrability, the Court's analysis should end with determining that the parties consented to an arbitration agreement with a valid delegation clause, without ruling upon any arguments Mr. White might bring regarding the scope or enforceability of the arbitration provision.

### A.   Mr. White entered into a valid agreement to arbitrate, which governs his dispute with Westlake.

Mr. White agreed to arbitrate—not litigate—the claims he asserts in his complaint. By signing the lease agreement, he acknowledged the applicability of the arbitration provision to the agreement and agreed to its terms. He did not choose to opt out of the agreement to arbitrate. The arbitration provision requires that all claims asserted against the lessor, the assignee, or servicers of either be submitted to binding arbitration. Mr. White's signature appears directly below the conspicuous disclaimer as to the arbitration provision, which is set forth on the previous page of the agreement and bordered in bold. There is no real question as to whether the agreement to arbitrate is valid.

### B.   The scope of the arbitration provision is a question for the arbitrator.

"The question of arbitrability is one for the courts unless the parties 'clearly and unmistakably provide otherwise.'" *McGee v. Armstrong*, 941 F.3d 859, 865–66 (6th Cir. 2019) (*quoting Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). The arbitration provision to which Mr. White agreed states that "all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision . . . shall be resolved by binding arbitration . . . ." *See* Ex. A, p. 4, ¶ 41(A), (C). The Sixth Circuit held, in both *McGee* and *Lowry v. JPMorgan Chase Bank, N.A.*, that arbitration provisions with delegation clauses materially similar to the one Mr. White agreed to constituted a "clear and unmistakable" delegation clause. 941 F.3d at 866; 522 F. App'x 281, 283 (6th Cir. 2013). This Court should reach the same result and hold that the arbitrator must decide any issues relating to the validity, scope, or enforceability of the arbitration provision.

7

### C.  Mr. White's claims are arbitrable.

As discussed above, the parties agreed to arbitrate even the arbitrability of any claims. Even if this were not the case, the arbitration provision is enforceable and requires arbitration of Mr. White's claims.

#### 1.  Mr. White's claims fall within the scope of the arbitration provision.

Mr. White expressly agreed that *any* dispute he had against services of the lessor or assignee, i.e., Westlake, would be resolved by a neutral, binding arbitration conducted and administered by the American Arbitration Association ("AAA"), or another arbitration forum of the parties' choosing. *See* Ex. A, p. 4, ¶41(A)–(G). "Dispute" is defined to include all federal and state claims related directly or indirectly to the lease, including claims based upon contract, tort, fraud, and those brought under the common law, all claims based upon the violation of state or federal statutes or regulations, and all claims against any of lessor's or assignee's servicers. *Id.* at ¶41(A)(b), (d), (e), (g). Because this provision requires that any dispute be submitted to arbitration, without exception, all of Mr. White's claims against Westlake, as the servicer of Mr. White's account under the lease, fall within the scope of the arbitration provision. Indeed, Mr. White's claims for violations of state and federal statutes, breach of contract, and breach of the duty of good faith and fair dealing, which arise out of his lease agreement, are specifically included in the definition of "dispute" in the arbitration provision, and thus are arbitrable.

#### 2.  The arbitration provision is not unconscionable.

The arbitration provision is not unconscionable. "In light of [the] clear constitutional and statutory authorities favoring arbitration," there is a "strong presumption that [a] general arbitration clause is not unconscionable." *Schnuerle v. Insight Commc'ns., Co. L.P.*, 376 S.W.3d 561, 575 (Ky. 2012). The "review of arbitration clauses for unconscionability involves a two-step process—first, a review focused on the procedures surrounding the making of the arbitration

8

clause (procedural unconscionability) and second, a review of the substantive content of the arbitration clause (substantive unconscionability)." *Id.* Mr. White bears the burden to show procedural or substantive unconscionability, but he can show neither.

Relevant factors to determine procedural unconscionability include "(1) the bargaining power of the parties, (2) the conspicuousness and comprehensibility of the contract language, (3) the oppressiveness of the terms, (4) the absence of a meaningful choice." *I3 Triple Crown Holdings, LLC v. Lowe's Home Ctrs., LLC*, 2019 WL 3321725, at *5 (E.D. Ky. July 24, 2019) (citing *Schnuerle*, 376 S.W.3d at 576). Unequal bargaining power is "insufficient in and of itself to establish unconscionability." *Id.* at *8 (citations omitted). A party "cannot be excused from complying with the arbitration provision if [he] simply failed properly to read the contract." *Id.* at *7 (citations omitted). Lastly, substantive unconscionability "refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Schnuerle*, 376 S.W.3d at 577 (citation omitted).

The mere fact that Westlake is a business while Mr. White is an individual is insufficient to show procedural unconscionability. And although the arbitration provision is a standard term in the lease agreement signed by Mr. White to lease the vehicle, it allows Mr. White to opt out of the arbitration process. Mr. White had a meaningful choice in agreeing to enter into the lease agreement and the arbitration provision.

Any alleged unequal bargaining power is heavily mitigated by the agreement's clear and conspicuous language and explanations of arbitration, including consumer-friendly elements (*e.g.*, small-claims court option), and specifically by the provision allowing Mr. White to opt-out of the arbitration provision without any change or consequence to the lease agreement. Paragraph 41, taking up almost the entire page 4 of the agreement, is bordered separately, so as

9

to stand apart from the other paragraphs, and explains in detail the arbitration process and the rights that are being given up by the agreement to arbitrate. Each side has an opportunity to present evidence to the arbitrator; discovery may be limited; arbitration proceedings are private and less formal than court proceedings; an arbitrator issues an award which a court may then enforce like a court judgment; courts rarely overturn an arbitrator's award. *See* Ex. A, p. 4, ¶ 41. The provision also sets forth in bold, capital print, that the parties give up their rights to a trial by jury or bring a class action lawsuit. *Id.* ¶ 41(B)(i). The provision even explains how to initiate arbitration, points the reader to the rules for the AAA, explains that he may choose another arbitration forum, and sets forth the basic arbitration fees. *Id.* ¶ 41(D)–(H). Lastly, paragraph 41 provides a process to opt out of the arbitration provision, giving Mr. White full control of his decision to arbitrate. The terms are clear and any failure by Mr. White to read the contract is not a valid excuse to avoid the requirement to arbitrate.

As to both procedural and substantive unconscionability, the arbitration provision applies equally to all parties bound by the arbitration provision. No party is bound to an obligation that the other is not. Because the arbitration provision in the lease agreement encompasses the claims brought by Mr. White and is both procedurally and substantively conscionable, this Court should dismiss this action and compel Mr. White to submit his claims to arbitration.

## CONCLUSION

The parties expressly agreed to arbitrate disputes like the ones presented here, including the question of whether the claims at issue are arbitrable. Thus, Westlake moves the Court to dismiss this action and compel arbitration.

Respectfully submitted,

*/s/ Alisa Micu*
Chadwick A. McTighe
Alisa Micu
STITES & HARBISON PLLC
400 West Market Street
Suite 1800
Louisville, KY  40202-3352
Telephone: (502) 587-3400
E-mail: cmctighe@stites.com
            amicu@stites.com
*Counsel for Defendant Westlake Portfolio Management, LLC*

11

## CERTIFICATE OF SERVICE

    I certify that on April 1, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notification of electronic filing to all CM/ECF participants of record.

                                              */s/ Alisa Micu*
                                              Alisa Micu